# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| KUNSTMUSEUM GEHRKE-REMUND, GMBH, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Cause Number: 2:14-cv-448 |
| SOUTH SHORE ARTS, INC., | ) ) | |
| Defendant. | ) ) | |

## OPINION AND ORDER

Before me is Plaintiff Kunstmuseum Gehrke-Remund, GMBH ("KGR")'s Motion for Preliminary Injunction. (DE 9) KGR claims that it owns a collection of replica paintings, replica and original photographs, replica dresses, and other items representing the work and life of the artist Frida Kahlo (the "Collection") that is worth approximately $3.5 million. The Collection is currently on display at the South Shore Arts ("SSA") facility in Munster, Indiana, and KGR wants the items back. I previously ordered that the Collection is to remain on display at SSA through the end of the exhibition, as planned, but that all parties were temporarily restrained from removing the Collection from SSA without further order of the Court. (DE 23) Now I have to decide whether to grant KGR a preliminary injunction to return the Collection to it after the exhibition closes on January 25th. Because KGR has demonstrated a likelihood of success on the merits and a potential for irreparable harm if the Collection is not returned to it, the preliminary injunction will be **GRANTED** but with the conditions

discussed below.

**Background**

KGR created the Collection at issue in this case after acquiring the rights to replicate the art of Frida Kahlo from Banco de Mexico, the trustee of the estate of Frida Kahlo. The Collection was originally displayed by KGR in its museum in Baden Baden, Germany. In March 2013, KGR contracted with a company named Global Entertainment Properties 1 (GEP1) to display the Collection as a touring exhibition, with the first stop in San Diego. The relationship between KGR and GEP1 is based on a contract and a later letter agreement which spelled out the terms of the deal. Things didn't go well in San Diego, leading KGR to file a legal action in California for the immediate return of the Collection. KGR claimed in the California litigation that the Collection was damaged, improperly stored and displayed, and that GEP1 had stopped making payments required by the contract. The California court issued a writ of possession and an ex parte TRO restraining GEP1 from transporting the Collection out of California. At the same time, KGR and GEP1 also commenced mandatory arbitration in California, which is evidently still pending.

Despite the California court's order, through a series of transactions involving a corporate shell game, two individuals, Martin Biallas and Robert Angel, caused the transfer of the Collection to SSA's facility in Munster, Indiana. As best I can tell, here is what happened: SSA contracted with an entity known as Global Entertainment Properties 2, LLC (GEP2) – and paid it a tidy sum – to display the Collection at its

Munster facility through January 25, 2015. (Def. Ex. J)[1] GEP2 had apparently received the right to display the Collection from a company known as "Moody Icons, Inc." (Def. Ex. I), who in turn received this same right from GEP1 (Def. Ex. H). Although GEP1 represented to me during a previous hearing that GEP1 and GEP2 are formally unrelated and GEP1's attorney disclaimed any knowledge of Moody Icons, it appears that all of these entities *are* at least somewhat related. The common denominators are Martin Biallas and Robert Angel who have signed on behalf of each entity at various times and have held management positions within each entity (*see e.g.* Def. Exs. H, I, J; Pl. Exs. A, B, C). As counsel for GEP1 admitted during the evidentiary hearing, GEP1 and GEP2 do share a common manager. Also, the law partner of GEP1's counsel served as the registered agent for Moody Icons. (DE 34 at 4)

Suffice it to say that there's something curious going on between these various entities and I haven't quite gotten to the bottom of it yet. In any event, GEP1 denied during the evidentiary hearing on the TRO that it has any ownership interest in the items at issue and GEP1 has submitted an affidavit from Robert Angel, as a representative of GEP2, stating the same. (DE 26, Ex. B; *see also* DE 32 at 2)

Once KGR found out that the Collection was in Munster, Indiana it filed this action against SSA, GEP1 and GEP2 under theories of replevin and conversion. KGR initially sought a TRO and the immediate return of the Collection. But because it appeared to me that SSA was an innocent party who paid good money for the rights to

---

[1] Exhibit notations are to the exhibits presented by the parties during the TRO hearing (DE 20).

display the Collection, I denied the TRO insofar as it requested the immediate return of the Collection. So pursuant to my earlier order, the Collection was to remain at SSA through the end of the exhibition on January 25, 2015. (DE 23) But my order also prohibited any party — including SSA — from transferring the Collection out of the SSA facility without court approval. With the January 25th date fast approaching, KGR now seeks a preliminary injunction and ultimately the return of the Collection which KGR says was stolen from it in California.

In the meantime, GEP1 and GEP2, who were both originally named in this lawsuit, have been dismissed from this matter upon KGR's request because, as discussed above, both GEP1 and GEP2 deny having any ownership interest in the items. (DE 36) GEP1's opposition to KGR's request for preliminary injunction therefore is moot, as is KGR's motion to strike GEP1's opposition brief (DE 33). That puts the pending request for a preliminary injunction in the unique position of proceeding unopposed because the only remaining defendant, SSA, has not filed any opposition to the request, nor did it join in GEP1's opposition. But that's probably because I already denied KGR's request to close down the exhibition at SSA, so once January 25th comes and goes, SSA will no longer have a horse in the race. It will have received all that it contracted for.

**Legal Standard**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction, a party must demonstrate a likelihood of success on the merits, a lack of an

4

adequate remedy at law, and that an irreparable harm will result if the injunction is not granted. *Id.* at 20; *see also Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007); *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005). "If the moving party meets the first three requirements, then the district court balances the relative harms that could be caused to either party." *Lambert*, 498 F.3d at 451. *See also Winter*, 555 U.S. at 24.

**Discussion**

Before getting into the substance, I'll note that I am not going to hold an evidentiary hearing on this motion. I already held an evidentiary hearing on KGR's request for a TRO. (DE 20) At that hearing, I heard argument from counsel along with the testimony of two witnesses who came from half way around the world to testify. In my way of thinking, no further evidence is required. The decision on whether to hold a hearing on a preliminary injunction is generally left to the district judge's discretion. *AlliedSignal, Inc. v. B.F. Goodrich Co.*, 183 F.3d 568, 577 (7th Cir. 1999) ("[T]here is no general requirement that a district judge hear live testimony or conduct a hearing at all."). Since I don't feel an additional hearing is necessary, and since no party has requested an additional hearing, I'll proceed with deciding this issue on the record already before me.

KGR has met its burden. To demonstrate that it is likely to succeed on the merits, KGR must show that it owns the Collection and that SSA is currently in possession of the Collection. *Lou Leventhal Auto Co., Inc. v. Munns*, 328 N.E.2d 734, 739 (Ind. Ct. App. 1975); *Tucker v. Capital City Riggers*, 437 N.E.2d 1048, 1051 (Ind. Ct. App.

5

1982). KGR has convinced me that it owns the Collection. KGR has presented a contract between it and GEP1 giving GEP1 the right to display the Collection. (Pl. Ex. A) A separate contract sells some replica paintings from KGR to GEP1 (Pl. Ex. B), which at first gives me some pause, until I read the Side Letter executed by KGR and GEP1 that explains that GEP1 has purchased the right to display the Collection and has separately purchased some poorer quality replicas (they are essentially posters) to sell in the museum shop (Pl. Ex. C). I have no doubt that SSA is actually in possession of the Collection and not something different. Indeed, a representative of KGR has visited the exhibition at SSA and testified convincingly that the items on display at SSA are, in fact, the Collection. (DE 29 at 8-10)

While it is true that there has been some discussion that Moody Icons might actually own the Collection, it appears to me that if Moody Icons own anything at all, it is only the poorer quality replicas (*i.e.* the posters) and not the actual Collection at issue in this case. What's more, Moody Icons is not a party to this matter and has asserted no claim, despite the fact that its representatives are involved in the lawsuit on behalf of the GEP entities. Thus, I have no reason to believe that Moody Icons is an indispensable party requiring the Court to order its joinder in this matter. *See* Fed.R.Civ.P. 19(b). But if that is incorrect, Moody Icons is free to seek intervention. *See* Fed.R.Civ.P. 24.

KGR further has no adequate remedy at law. To show this, money damages must be a "seriously deficient" remedy for the harm suffered. *Roland Mach. Co. v. Dresser Indus. Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). That's certainly the case here. The Collection is one of a kind and not something that can be recreated. (DE 29 at 15) KGR

6

no longer has the license to further replicate the paintings, so if it loses these or they are damaged, it cannot simply redo them. And since no other such collection exists in the world, the Collection represents the only way the general public can view a likeness of all of Frida Kahlo's paintings in one place. No amount of money can change that.

Along these same lines, KGR has shown that it will suffer irreparable harm if I don't issue the injunction. KGR needs to show that irreparable harm is more than a mere possibility – it must show it is *likely* to occur absent an injunction. *Winter*, 555 U.S. at 22. It has certainly done so here. First, KGR has convinced me that the Collection has been damaged during the time that the GEP entities have possessed it. And since SSA has a contract with GEP2 and not KGR for the display of the Collection, it is presumed that come January 25, 2015, SSA will return the Collection to GEP2. That's bad news for KGR because not only will the Collection be subjected to further damage, but the GEP entities have already shown their willingness to abscond with the Collection in apparent contravention of not only a contract, but also a California state court order. To call the whole sordid episode troubling would be an understatement. KGR has represented to me that the next stop on the Collection's tour is Canada. (DE 29 at 12) I have no doubt that whatever GEP entity would receive the Collection back from SSA would then immediately send it to Canada thus requiring KGR to once again try to get assistance — this time from a Canadian court — in preventing further transfer of the items.

In balancing the harms, there is no question that the harm to KGR greatly outweighs any harm to SSA, the only remaining defendant. In fact, as I have

7

mentioned, because SSA has been permitted to maintain the exhibition through January 25, 2015 as originally scheduled, it will suffer no harm other than maybe a *de minimus* amount of hassle in coordinating with KGR for the packaging and transport of the Collection (but that probably would have been the same regardless of who picks up the Collection). If I don't grant the injunction, however, KGR will once again be faced with having to track down its property – this time in another country – and re-instituting this same legal action for a *third* time, during which time the Collection will likely incur further damage and may even be lost forever. Enough is enough.

In sum, I will preliminarily **GRANT** KGR's request (DE 9), but KGR will be required to keep the Collection stored in this District until further order of this Court. This will enable all parties who may have an interest in the Collection to fight the matter out in the pending litigation and arbitration in California. Once those matters are resolved, KGR can return to this Court and seek a final judgment unconditionally ordering the return of the property to KGR (if it is KGR who prevails in California). If, on the other hand, the California litigation results in some other entity having a right to the Collection, then that party can seek intervention in this Court and ask for whatever relief from me that it may deem necessary. But for now, in order to preserve the status quo, the Collection must be properly and securely stored by KGR within the Northern District of Indiana.

**IT IS THEREFORE ORDERED THAT:**

(1) SSA is ordered to relinquish possession and control of any and all items of the Collection identified by KGR to KGR upon completion of SSA's exhibition, but no

8

later than January 26, 2015.

(2) SSA is ordered not to relinquish possession or control of any and all items of the Collection to any other party, person, or entity, or anyone other than representatives of KGR for any reason without further order of this Court.

(3) KGR will be responsible for the packaging and shipment of all items of the Collection relinquished to it by SSA, and SSA shall not be responsible for the costs, insurance, or fees associated therewith.

(4) SSA will grant reasonably sufficient time, as determined by KGR and its retained transport service provider, to package and remove all items of the Collection relinquished to KGR by SSA from SSA's facility in Munster, Indiana.

(5) Because this Order is preliminary in nature, and in order to maintain the status quo, KGR shall properly maintain the Collection at a storage facility of its choosing in this District until the completion of the related litigation and the arbitration proceedings in California, or until further order of this Court.

(6) KGR's Motion to Strike GEP1's Memorandum in Opposition (DE 33) is **DENIED AS MOOT**.

(7) This matter is set for a telephonic status hearing on April 14, 2015, at 10:00AM.

**SO ORDERED**.

ENTERED: January 22, 2015

                                                                         s/Philip P. Simon
                                                                         PHILIP P. SIMON, CHIEF JUDGE
                                                                         UNITED STATES DISTRICT COURT